IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM VICTOR and DEMETRIUS BAILEY, | : : : | |
| | : | Civil Action No. 3:07-CV-2058 |
| Plaintiffs | : : | |
| | : | (Judge Nealon) |
| v. | : : | |
| | : | (Magistrate Judge Carlson) |
| R.M. LAWLER, et al., | : : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I.    INTRODUCTION**

We are now called upon to address the last remaining claims advanced by Demetrius Bailey in this longstanding prisoner civil rights lawsuit. In an order entered on May 18, 2010, this Court granted summary judgment in favor of Defendants on all of Plaintiff William Victor's claims and on all but five of the claims brought by Plaintiff Demetrius Bailey. (Doc. 332.) Now pending before the Court in the above-captioned litigation are cross-motions for summary judgment filed by Plaintiff Demetrius Bailey (Doc. 317) and Defendants, all of whom are past and present employees of the Pennsylvania Department of Corrections at SCI-Huntingdon (Doc. 328). The motions are supplemental dispositive motions that address Demetrius Bailey's five remaining claims. The parties have filed briefs in support of their

1

motions (Docs. 318, 329), and Defendants have filed a brief opposing Plaintiff Bailey's motion (Doc. 325). Bailey did not file a brief in opposition to Defendants' motion. Upon consideration, we find not only that Bailey has failed adequately to support his own request for summary judgment, but that the evidence of record, and applicable law, dictate that judgment be entered in Defendants' favor on Bailey's remaining five claims. Accordingly, we will recommend that Plaintiff Bailey's motion be denied, and that the Court grant Defendants' motion and enter judgment in favor of Defendants.

## II. BACKGROUND

Plaintiff Demetrius Bailey is serving a life sentence for murder and has served time under his sentence at various state correctional facilities throughout Pennsylvania. At all times material to this action, Plaintiff was incarcerated at SCI-Huntingdon. Specifically, between March 23, 2007, and October 29, 2007, Bailey was housed in the G-block restricted housing unit ("RHU") at SCI-Huntingdon.

Also at all times material to this action, each of the 25 named Defendants was an employee of the Pennsylvania Department of Corrections stationed at SCI-Huntingdon. Among the named Defendants, Defendant Lawler was and remains the Superintendent of the prison; Defendant Harlow was the Deputy Superintendent for Facilities Management; and Defendant Varner was the Assistant to the

Superintendent. Defendants Baird and Harman were employed as Corrections Officers 3 in the Security Office of SCI-Huntingdon.

Within the G-block RHU, Defendant Walter was employed as a Corrections Officer 3; Defendant Oakes was employed as a Corrections Officer 2; and Defendants Boal, Donaldson, Stever, Lehman, Grove, Means, Beaver, Garzarelli, Yost, and Hoffer were employed as Corrections Officers 1.

With respect to the remaining Defendants, Defendant Cook was employed as a Corrections Counselor; Defendants Miller, Fink, and Ormsby were employed as nurses; Defendants McMahon and Fisher were employed as Psychological Services Specialists; Defendant Gembinski was employed as a Psychological Services Specialist and held the title of Mental Health Coordinator; and Defendant Mitchell was employed as a Hearing Examiner at SCI-Huntingdon.

The factual background of this case does not admit of a simple or straightforward narrative. Instead, the pleadings and other filings in this case show that Demetrius Bailey spent a period of time in the G-block RHU that was marked by persistent and repeated disputes and the filing of numerous grievances about a range of issues Bailey and his former co-Plaintiff, William Victor, allegedly and independently faced while housed there, although the disputes that each inmate raised

appear to be entirely unrelated. We provide some additional background information relating to Plaintiff Bailey's claims below.

Demetrius Bailey was housed at SCI-Graterford prior to being transferred to SCI-Huntingdon. During his deposition, Bailey attested to his belief that he was transferred to SCI-Huntingdon as retaliation for his having filed a civil complaint in the Eastern District of Pennsylvania, and that some unspecified staff member at SCI-Graterford had him transferred as a result. This marked the beginning – for purposes of this action – of a long stretch during which Bailey perceived that a great many aspects of his treatment at SCI-Huntingdon were retaliatory. Most of the alleged retaliation that Bailey perceived is claimed to have occurred when certain of the Defendants, and possibly others, issued misconduct reports to him for various offenses or violations of prison rules. It appears that Bailey believes that virtually all of the misconducts he received while housed in the G-block RHU were issued in retaliation for his having filed past grievances and other litigation. He also contends that corrections employees assaulted him on at least two occasions, and that these alleged assaults were unprovoked and retaliatory. Bailey filed numerous grievances regarding these various allegedly retaliatory incidents and actions, though it appears clear from the record that he did not file grievances as to all of them, and he did not identify all of the alleged actors in each of his grievances. Moreover, from our

4

careful review of the substantial record submitted by the parties, it appears that Bailey did not pursue grievances regarding any alleged retaliation relating to the issuance of misconducts or other discipline, and he did not exhaust any claims they may have had regarding the procedures that were employed in the disciplinary proceedings relating to these misconducts.

As we discussed in our prior report and recommendation addressing Bailey's claims, the undisputed evidence of record reveals that during his time at SCI-Huntingdon, he exhausted 19 grievances, of which five have some potential relation to this case. These relevant exhausted grievances include: No. 184544 (regarding alleged improper conduct by Counselor Cook); No. 199098 (regarding a requested cell transfer and another inmate); No. 201025 (regarding an alleged assault during a cell extraction by Defendant Oakes and others); No. 202113 (regarding an alleged statement that Nurse Fink made to Bailey about another inmate); and No. 202759 (regarding alleged tampering with legal mail). It appears that Bailey is claiming that each of these alleged incidents constitutes retaliation against him for resorting to his right under the First Amendment to file grievances or otherwise petition for the redress of grievances.

In our prior report, we made the following observation about the relationship between Bailey's five exhausted grievances and the litigation that he brought in this court:

> We have some question as to how these five exhausted grievances match up with the claims actually brought in this case, and we have some doubt regarding whether all of these claims are, in fact, appropriate for trial. For example, we strain to perceive how Plaintiff Bailey's dispute with Nurse Fink (Grievance No. 202113), whom he alleges made comments to him about another inmate, rises to the level of a bona fide legal dispute regarding Bailey's own rights – constitutional or otherwise. Likewise, we are hard-pressed to comprehend how Bailey's dispute with Counselor Cook relates to the claims he has actually brought in this case, as it is not readily apparent that the conflict concerned Bailey's rights under the First, Eighth, or Fourteenth Amendments, but instead appears limited to a conflict that Bailey had with a single counselor assigned to him. Nevertheless, we are reluctant to engage in a dispositive analysis regarding any of these exhausted claims because it appears that the Defendants – who have the burden of demonstrating that summary judgment is warranted as to any particular claim – have conceded that these claims may proceed.

(Doc. 315, at pp. 23-24.)

Thus, while Bailey's claims appeared flawed, out of an abundance of caution and in order to afford Bailey every opportunity to sustain these claims, we refrained from recommending their dismissal. Instead, we further instructed Defendants that if, in fact, they believed that they were entitled to summary judgment on Bailey's

remaining five claims, it was incumbent upon them to file a timely supplemental motion for summary judgment, and to make clear the factual and legal bases for summary disposition of the action. They have now done so, and this report addresses these remaining claims.

### III. STANDARD OF REVIEW

Defendants have collectively moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown

that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## IV. DISCUSSION

### A. Plaintiff Bailey is Not Entitled to Summary Judgment.

In his motion for summary judgment on his remaining five claims, Bailey suggests that the Defendants have not disputed any of the facts alleged by him in the

grievances that form the basis for his remaining claims. Additionally, Bailey seems to suggest that the Court must, at the summary judgment stage, simply accept his alleged facts as true and allow the case to proceed to a jury. As the above standards for summary judgment under the Federal Rules of Civil Procedure make clear, Bailey misapprehends his obligation on summary judgment to come forward with some evidence supporting his claims, and to demonstrate an absence of disputed fact with respect to those claims. He has not produced any such evidence, and he certainly has not demonstrated that there is an absence of disputed facts regarding any of his claims. In his motion and supporting brief, Mr. Bailey simply ignores entirely the factual, legal, and evidentiary bases for his claims, and relies instead upon vague assertions and his own view of what the law requires. In short, he is not entitled to summary judgment.

### B. Defendants are Entitled to Summary Judgment on Plaintiff's Remaining Claims.

Plaintiff's remaining claims all revolve around the same theme: that certain of the Defendants, in various discrete ways, retaliated against him for exercising his right under the First Amendment to engage in protected activity such as pursuing legal claims. A prisoner claiming that prison officials have retaliated against him for exercising his rights under the First Amendment must prove that: (1) the conduct in

9

which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Examples of adverse actions that have, in certain cases, been found to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001), and placing a prisoner in administrative custody, Allah, 229 F.3d at 225. The third factor requires that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34.

To establish this third, and crucial, component to a constitutional retaliation claim, causation, Bailey must make an exacting showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997);

10

> Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Moreover, when examining these causation issues, we are specifically admonished that:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take. The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events. Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

If a plaintiff discharges his obligation to satisfy the foregoing three-part prima facie test, the burden shifts to the defendant to prove by a preponderance of the evidence that he or she would have made the same decision absent the protected conduct for reasons reasonably related to penological interest. Carter, 292 F.3d at 158. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

With these considerations in mind, we examine each of Plaintiff's five remaining claims, each of which appears to be based upon a grievance that he pursued at SCI-Huntingdon.

### 1. Grievance No. 184544 - Claim Against Defendant Cook

In this claim, Plaintiff contends that Counselor Cook threatened to issue him a misconduct and made a sexual comment to him. Counselor Cook has denied these allegations in a declaration. Aside from the fact that Plaintiff has adduced essentially no evidence to support this claim, even assuming that Counselor Cook did make a sexual comment to Plaintiff, and even assuming he did threaten to issue a grievance, Plaintiff has not shown that these isolated instances qualify as adverse actions

sufficient to support a claim for First Amendment retaliation. Plaintiff further has identified no evidence that would permit the Court to conclude that a dispute of fact exists regarding the third requirement that Plaintiff demonstrate a causal relationship between the allegedly adverse action and Plaintiff's alleged protected activity. In short, we conclude that Plaintiff has failed to identify sufficient evidence to support his claim against Counselor Cook, and we find further that Plaintiff has failed to make out a prima facie case in support of his claim that Counselor Cook retaliated against him.

### 2. Grievance No. 202112 – Claim Against Nurse Fink

In Grievance No. 202113, Plaintiff contends that Nurse Fink made certain disparaging comments about another inmate to Bailey. Plaintiff has done nothing to explain how Nurse Fink's alleged comments about another inmate – something that Nurse Fink has denied – could conceivably constitute retaliation against Plaintiff for his own protected activity. Not only is it impossible for us to perceive how this isolated incident could support a claim for First Amendment retaliation, Plaintiff has offered nothing to support or otherwise explain this claim, and his testimony offered during his deposition does nothing to support this claim. We thus conclude that Plaintiff has not demonstrated a prima facie case against Nurse Fink because he has not identified any adverse action that Nurse Fink took against him for his asserted

protected activity. Accordingly, we will recommend that the Court grant Defendants' motion for summary judgment on Plaintiff's claims against Nurse Fink.

### 3. Grievance No. 199098 – Claim Against Defendants Oakes and Walter

In Grievance No. 199098, Bailey alleges that Defendants Oakes and Walter retaliated against him by not transferring him to a different cell. This claim actually appears to be predicated upon Bailey's desire to visit the SCI-Huntingdon law library with another inmate named Sutton, who apparently was a co-plaintiff with Bailey in one or more cases that the two had brought in state court. (Doc. 263, Bailey Dep., at 54.) However, SCI-Huntingdon maintained a policy that prohibited two or more RHU inmates from using the RHU law library at the same time. Since both Bailey and Sutton were incarcerated in the RHU, they were not permitted to use the library together.

As an initial matter, it is difficult to understand precisely what protected conduct serves as the predicate for this claim. But assuming it is Bailey's civil lawsuits, Bailey has offered nothing other than his own assertion to support his claim that Defendants' adherence to established prison policy was somehow retaliatory. Furthermore, not only has Bailey not come forward with sufficient evidence to support his claim, even if he had been able to make a prima facie case, the undisputed

14

evidence demonstrates that SCI-Huntingdon had long maintained a policy to restricted access to the RHU law library to no more than one inmate at a time. Bailey takes issue with this policy, but it appears undisputed that it existed before Bailey and Sutton brought their lawsuits, and Bailey does not suggest that his placement in the RHU or the enforcement of established policy regarding access to the law library was somehow improper or retaliatory. It is well-settled that "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are necessary to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). We find that such deference is warranted here, and Bailey has given us no reason to find otherwise. Accordingly, we will recommend that summary judgment be entered on Plaintiff's claims based upon Grievance No. 199098.

### 4. Grievance No. 202759 – Claim Against Oakes, Stever, and Means

In this claim, Bailey had grieved the handling of his legal mail by Sergeant Oakes and Officers Stever and Means, alleging that these prison employees improperly delivered his mail to another inmate, William Victor, Bailey's co-plaintiff in this case. The legal basis of Bailey's claim relating to this alleged tampering with his mail is not particularly clear, though Bailey seems to suggest that the mail was

15

intentionally misdirected in order to cause harm to his efforts to obtain legal relief, or perhaps out of retaliation for exercising his First Amendment right to file lawsuits. As with his other claims, Plaintiff has failed to support this claim with any real evidence.

To the extent that Plaintiff was contending that he was somehow denied access to the courts as a result of the allegedly misdirected mail, Bailey needed to show that he suffered an actual injury to a legitimate, non-frivolous legal claim. See Lewis v. Casey, 518 U.S. 343, 352 (1995). He simply has not done so here.

To the extent that Bailey was attempting to claim that the alleged misdirection of his mail amounted to retaliation, he has similarly failed to support this claim in any way. He has not come forward with any evidence to show that the misdirection of any mail was intentional, or that the misdirection was undertaken in an effort to retaliate against him. There is simply no basis to permit this particular claim to go forward, and we, therefore, recommend that the Court grant Defendants' motion for summary judgment with respect to this particular remaining claim.

### 5. Grievance No. 201025 – Claim Against Defendant Oakes

Lastly, Plaintiff has brought a claim relating to Grievance No. 201025, in which he contends that Defendant Oakes and other prison staff assaulted him in his cell. This claim, which we also construe to be one for retaliation, appears to have

arisen out of an incident in 2007, when officers extracted Bailey from his prison cell, apparently after observing him attempting to harm himself. Bailey has not explained how this incident relates to protected activity in which he had engaged, and we find that he has not made out a prima facie case of retaliation. Furthermore, as with his earlier claims, Bailey has simply failed to support this particular claim with evidence. We, therefore, perceive no basis upon which to permit this claim for retaliation to proceed to a jury, and we, therefore, recommend that the Court grant summary judgment as to this final remaining exhausted claim.

In sum, as to these remaining retaliation claims, when they are individually assessed, it is apparent that Bailey has simply failed to show either that the conduct in which he engaged was constitutionally protected or that his constitutionally protected conduct was a substantial motivating factor in the defendants' actions. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). In particular, with respect to the critical causation element of a retaliation claim, Bailey completely fails to do what must be done to sustain such a claim: prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997). Rather, the evidence simply shows several discrete and disparate episodes, involving different

and unrelated prison officials, in separate factual settings. Thus, in some instances, Bailey's complaints seem premised on conduct which simply entails the even-handed enforcement of settled prison policies. In other instances, Bailey construes the alleged isolated remarks by two prison staff as proof of a retaliatory conspiracy. Mindful of the fact that "[a] court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate", <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007), we cannot ignore this fundamental failure of proof on Bailey's part. Nor can we permit these flawed claims to proceed to trial where essential elements of proof are completely lacking. Accordingly, for the foregoing reasons, it is recommended that the Defendants' motion for summary judgment as to these flawed claims be granted.

## V. **RECOMMENDATION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED THAT Plaintiff Bailey's motion for summary judgment (Doc. 317) be DENIED and that Defendants' motion for summary judgment (Doc. 328) be granted, and that the case be marked closed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of August, 2010.

                                  *S/Martin C. Carlson*
                                  **United States Magistrate Judge**